198 N.J. Super. 190 (1985)
486 A.2d 920
VICTORIA M. JANSSON AND ELLEN E. MCNAMARA, PLAINTIFFS-APPELLANTS,
v.
FAIRLEIGH DICKINSON UNIVERSITY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 18, 1984.
Decided January 14, 1985.
*191 Before Judges PETRELLA and BAIME.
Franzblau, Falkin & Goldman, attorneys for appellants (Richard M. Goldman, on the letter brief).
*192 Porzio, Bromberg & Newman, attorneys for respondent (David J. Reich, on the letter brief).
The opinion of the court was delivered by BAIME, J.A.D.
Plaintiffs appeal from a decision of the Superior Court, Law Division, denying their motion to vacate an order dismissing their complaint for failure to answer interrogatories. They also appeal from the court's order denying their application to file an amended complaint. The trial judge found that plaintiff's former attorney failed to serve defense counsel with answers to interrogatories despite repeated written requests. A substantial period of time elapsed between the date of the dismissal and the application to restore the matter to the trial list. While obviously sympathetic to plaintiffs' plight, the trial court declined to grant the requested relief upon the basis that to do so would render our discovery rules totally nugatory. Since the statute of limitations had expired, the effect of the judge's decision was to completely preclude the prospect of recovering damages from the defendant. However, the trial judge reasoned that the appropriate avenue for compensation was a malpractice action and, thus, plaintiffs were not without a viable remedy. This appeal followed.
The unfortunate events leading up to this action occurred on June 21, 1978. While students attending defendant university, plaintiffs were brutally attacked and repeatedly raped in their campus dormitory. The perpetrators were eventually apprehended and convicted. Plaintiffs retained an attorney to represent them in a civil suit against defendant. On June 19, 1980, plaintiffs' former attorney filed a complaint alleging essentially that defendant was negligent in failing to provide adequate campus security. Plaintiffs sought compensatory and punitive damages. Defendant filed an answer and, thereafter, forwarded a series of interrogatories to plaintiffs' lawyer. Despite repeated written requests, plaintiffs' counsel never responded. *193 Although the record is not entirely clear, at some point plaintiffs prepared answers to the interrogatories and delivered them to their lawyer. Nevertheless, it is undisputed that the answers were never forwarded to defense counsel. On April 16, 1981, defendant's motion to dismiss the complaint was granted and a copy of the court's order was forwarded to plaintiffs' attorney. Plaintiffs' attorney never moved to vacate the previously entered dismissal order and apparently took no further action. Despite this fact, the lawyer repeatedly misrepresented that the trial was imminent when plaintiffs inquired as to the status of the case.
The matter remained dormant until plaintiffs dismissed their attorney and retained present counsel. Upon obtaining the file from plaintiffs' former lawyer, counsel learned that the complaint had been dismissed. On March 22, 1984, plaintiffs' attorney promptly moved to reinstate the complaint. Additionally, he applied for permission to amend the pleadings. In opposition to the motion, defense counsel contended that he was denied the opportunity to investigate the incident in a timely fashion. He asserted, without specification, that his client would be severely prejudiced in the event plaintiffs' motions were granted. Based upon these facts, the trial judge denied plaintiffs' applications.
At the outset, we note that the issue presented here, though difficult, is hardly unique. In a myriad of factual patterns and on a daily basis, our courts constantly grapple with the problem of attempting to reconcile the strong interests in the finality of litigation and judicial economy with the equitable notion that justice should be done in every case. At one end of the spectrum, "there is the need to instill firmness and meaning to the provisions of our discovery rules, thereby maintaining a consistent and predictable sense of order...." Crews v. Garmoney, 141 N.J. Super. 93, 96 (App.Div. 1976). At the other, "there is a general disinclination to invoke the ultimate sanction of dismissal where the statute of limitations *194 has run." Ibid. The tension between these competing values becomes more acute when the parties are blameless and have relied upon the presumed competence and good faith of their attorneys. Undoubtedly, there are some individuals "sophisticated enough in the affairs of the world to be able to select the good from the bad among [the] mass of lawyers throughout the country." Link v. Wabash R. Co., 370 U.S. 626, 647, 82 S.Ct. 1386, 1384, 8 L.Ed.2d 734, 747 (1962) (Black, J., dissenting). Unfortunately, this is not always the case. To be sure, instances of misconduct or incompetence are relatively rare in the legal profession. When they occur, however, the financial penalties heaped upon the client are often disastrous. Against this backdrop, we believe that the sins or faults of an errant attorney should not be visited upon his client absent demonstrable prejudice to the other party. Consistent with that belief, we are compelled to reverse the trial court's order and remand for further proceedings.
To some, our decisions in this area might seem to reflect a degree of judicial ambivalence. In truth, we have approached different factual situations with varying degrees of firmness. In some cases, we have emphasized the principle of finality and the need to command compliance with our procedural rules. The principle is one of repose and dictates that "litigation must eventually be ended and that at some point the prevailing party be allowed to rely confidently on the inviolability of his judgment." Hodgson v. Applegate, 31 N.J. 29, 43 (1959). In the area of discovery, it assures predictability and promotes the expeditious disposition of litigation. See Zaccardi v. Becker, 162 N.J. Super. 329, 332-333 (App.Div. 1978), certif. den. 79 N.J. 464 (1978) (Zaccardi I); Crews v. Garmoney, supra, 141 N.J. Super. at 95-97; Quagliato v. Bodner, 115 N.J. Super. 133, 138 (App.Div. 1971); Schlosser v. Kragen, 111 N.J. Super. 337, 342 (Law Div. 1970). In other cases, the rules have been relaxed in order to achieve essential fairness. Whether based upon the specific provisions of R. 4:50-1(f), which permit the court to relieve a party from the operation of an order, see, e.g., Manning *195 Engineering, Inc. v. Hudson Cty. Parks Comm'n, 74 N.J. 113, 120 (1977); Palko v. Palko, 73 N.J. 395, 401 (1977); Court Invest. Co. v. Perillo, 48 N.J. 334, 341 (1966); Hodgson v. Appelgate, supra, 31 N.J. at 341; Tenby Chase Apartments v. N.J. Water Co., 169 N.J. Super. 55, 59-60 (App.Div. 1979), or the general relaxation principle set forth in R. 1:1-2, see Zaccardi v. Becker, 88 N.J. 245, 253 n. 3 (1982). Gnapinsky v. Goldyn, 23 N.J. 243, 248 (1957); Vines v. Orange Memorial Hospital, 192 N.J. Super. 496, 499 (App.Div. 1984); Schlosser v. Kragen, supra, 111 N.J. Super. at 346, it has been said that "justice is the polestar and our procedures must ever be moulded and applied with that in mind." N.J. Highway Auth. v. Renner, 18 N.J. 485, 495 (1955).
Our review of the relevant decisions discloses several important factors that have generally been considered in determining whether the rules should be relaxed. These include (1) the extent of the delay, (2) the underlying reason or cause, (3) the fault or blamelessness of the litigant, and (4) the prejudice that would accrue to the other party. Applying these criteria here, the record clearly discloses that the delay in seeking to reinstate the complaint was substantial. While plaintiffs' present counsel took prompt action to restore the case to the trial list, we note that almost four years had passed since the entry of the dismissal order. Nevertheless, it is equally plain that plaintiffs were, themselves, entirely blameless. They were entitled to believe that their attorney was properly representing them and pursuing their interests. Surely, it cannot fairly be said that they were duty-bound to supervise the daily professional services of the lawyer they chose to retain. Even assuming the existence of such a duty, the record reflects that they repeatedly inquired with respect to the status of the case. Clearly, they had no reason to know or suspect that their attorney was derelict in performing his professional responsibilities. Although our Supreme Court has never had occasion to decide the effect of an attorney's gross misconduct on the rights of his client, see Baumann v. Marinaro, 95 N.J. 380, 398 *196 (1984), it has expressed its reluctance to deny a party his right to a trial on the merits on that account. See, e.g., Crispin v. Volkswagenwork, A.G., 96 N.J. 336, 346 (1984). See also Paxton v. Misiuk, 34 N.J. 453, 457-458 (1961); Gnapinsky v. Goldyn, supra, 23 N.J. at 247-248; McLaughlin v. Bassing, 100 N.J. Super. 67, 70 (App.Div. 1967) (Sullivan, J.A.D., dissenting); rev'd on dissent, 51 N.J. 410 (1968).[1] We believe that in the absence of demonstrable prejudice to the other party it is neither necessary nor proper to visit the sins of the attorney upon his blameless client.
We are not insensitive to the legitimate concerns expressed by the trial judge that if our discovery rules are to have any meaningful impact upon our civil dockets they must be strictly enforced. Nor are we unmindful of the perils and gravitational pull of the slippery slope wherein the efficacy of our rules is destroyed by the gradual cumulation of exceptions. We recognize that imposition of the severe sanction of dismissal is imposed not only to penalize those whose conduct warrants it, but to deter others who may be tempted to violate the rules absent such a deterrent. Zaccardi v. Becker, supra, 162 N.J. Super. at 332. Nevertheless, we doubt the prophylactic effect of a dismissal under the circumstances present here. Simply stated, we cannot believe that an attorney would willfully fail to abide by his oath upon the slim hope that a court might subsequently deal leniently with his client. We note in that regard that our Supreme Court does not lack disciplinary authority over a wayward lawyer. We, thus, perceive no justification, moral or legal, for punishment of an innocent litigant for the personal conduct of his counsel unless the other party would be prejudiced.
*197 The sparse record before us is not wholly informative with respect to the issue of whether defendant would be prejudiced by reinstatement of the complaint. We note that the incident was apparently thoroughly investigated by the appropriate law enforcement authorities. We cannot say whether the passage of time has impaired the ability of the university to defend. Therefore, we are constrained to remand the matter for further proceedings to ensure that this issue is carefully reviewed. Accordingly, we reverse the trial court's order denying plaintiffs' application to vacate the dismissal of the complaint and remand for proceedings consistent with this opinion.[2] We do not retain jurisdiction.
NOTES
[1] The federal courts have also been hesitant to dismiss a claim solely on the basis of the misconduct of an attorney. See, e.g., Boughner v. Sec. of Health, Ed. Welf., 572 F.2d 976, 978 (3rd Cir.1978); United States v. Cirami, 563 F.2d 26, 34-35 (2nd Cir.1977); Anderson v. Air West, Inc., 542 F.2d 522, 526 (9th Cir.1976); Lucas v. Juneau, 17 Alaska 75, 20 F.R.D. 407, 411 (1957). But see Link v. Wabash R. Co., supra.
[2] The trial judge had no occasion to decide plaintiffs' motion to amend the complaint. If the court decides to vacate the order dismissing plaintiffs' suit, it will be necessary for him to consider as well the motion to amend the complaint.