**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0892-16T1

DR. EMMANUEL OKEREKE,

    Plaintiff-Appellant,

v.

ROSS UNIVERSITY SCHOOL OF
MEDICINE, DR. ENRIQUE FERNANDEZ,
and DR. NANCY PERRI,

    Defendants-Respondents.

_____

Argued March 1, 2018 — Decided June 26, 2018

Before Judges Simonelli and Gooden Brown.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Docket No. L-
1137-11.

Christian R. Oehm argued the cause for
appellant (Lindgren, Lindgren, Oehm & You,
LLP, attorneys; Christian R. Oehm, on the
briefs).

Glenn T. Graham argued the cause for
respondents (Kelley Drye & Warren, LLP,
attorneys; William S. Gyves, on the brief).

PER CURIAM

Plaintiff Emmanuel Okereke appeals from the September 30, 2016 trial court order denying his motion to vacate the 2012 dismissal of his complaint against defendants Ross University School of Medicine (RUSM) and two of its faculty members. The underlying action arose out of plaintiff's unsuccessful attempt to secure a medical degree from RUSM where he re-enrolled in 2002. The court dismissed the complaint with prejudice based on plaintiff's repeated discovery violations. Plaintiff asserts his attorneys' misconduct, errors, or negligence constituted exceptional circumstances warranting relief under Rule 4:50-1(f), and the court should have excused his four-year delay in applying for relief. We disagree and affirm.

On February 8, 2011, plaintiff filed a five-count complaint against defendants, seeking injunctive relief and monetary damages. In the complaint, plaintiff alleged that while attending RUSM, the staff "singled [him] out for derogatory and discriminatory treatment" and "unfairly, arbitrarily and capriciously [gave him] a failing grade despite his excellent performance of the requisite academic requirements of his studies." He further alleged that when he complained, he was retaliated against and received more unfair treatment, which ultimately caused him to miss a required portion of the United States Medical Licensing Examination (USMLE). Plaintiff, who is

Nigerian, asserted claims for violation of the New Jersey Law Against Discrimination, tortious interference, defamation, and breach of contract. He also requested an order compelling defendants to grant him an extension of time to register, prepare, and sit for the USMLE.

In a July 8, 2011 order, the court granted in part defendants' motion to dismiss the complaint for failure to state a claim, dismissing all but the breach of contract and injunctive relief claims. Defendants filed a contesting answer on September 22, 2011, and, on November 2, 2011, served plaintiff with interrogatories and document demands, as well as a notice to produce plaintiff for deposition on December 15, 2011. By letter dated November 15, 2011, plaintiff's then-attorney, John Charles Allen, forwarded the requests to plaintiff, and asked plaintiff to return the interrogatory answers and requested documents to him so that he could review them before forwarding them to defendants. The letter also invited plaintiff to contact Allen if he had "any questions or would like to speak with [him]."

When plaintiff failed to respond, by letter dated December 13, 2011, defendants informed Allen that if they did not receive responses by December 27, 2011, they intended to move to compel discovery or, alternatively, dismiss the complaint for failure to submit timely responses to their discovery requests.

3

Subsequently, defendants agreed to extend the response deadline to January 11, 2012. When plaintiff failed to respond, on January 12, 2012, Allen sent plaintiff another letter advising him it was "imperative that [he] provide . . . answers in order to avoid a [m]otion by [d]efendants to [d]ismiss [his] complaint and case." In the letter, Allen reiterated that plaintiff should contact him with "any questions[.]"

Receiving no response and with the March 21, 2012 discovery end date approaching, on January 18, 2012, defendants filed a motion to compel discovery responses or, alternatively, dismiss the complaint. The following day, Allen forwarded defendants' motion to plaintiff, accompanied by a letter stating it was "at least [his] fifth . . . request for [plaintiff] to provide [his] responses to [d]efendants' [d]iscovery [r]equests." Allen cautioned plaintiff that failure to comply would "very likely" result in the dismissal of the case.

On February 3, 2012, the court granted defendants' motion and dismissed plaintiff's complaint without prejudice for failure to respond to discovery demands. On February 6, 2012, Allen sent plaintiff an email stating he had "warned [plaintiff] on numerous occasions that this would occur" if he did not provide answers to defense counsel. Allen also explained that the dismissal of the complaint was without prejudice, meaning the court could reinstate

A-0892-16T1

the complaint if plaintiff submitted complete responses to their discovery requests within ninety days of the dismissal and paid the reinstatement fee. Allen implored plaintiff to "[p]lease make it [his] absolute priority to prepare and provide [him] with [his] answers . . . without further delay." The email included a read receipt notification, indicating plaintiff opened the email approximately thirty minutes after Allen sent it.

On March 1, 2012, plaintiff sent Allen his purported answers to defendants' interrogatories and supporting documents. However, before Allen forwarded the responses to defendants, on April 9, 2012, defendants moved to dismiss the complaint with prejudice. On April 26, 2012, Allen sent a letter to the court requesting an adjournment of defendants' motion. Allen explained he had "only recently . . . received [plaintiff's] responses to [d]efendants' discovery requests" and needed two weeks "to prepare them for service upon [d]efense [c]ounsel." Allen also informed the court that plaintiff had been in a remote part of Nigeria caring for ill family members for several months, making communication difficult. Based on Allen's representations in his April 26, 2012 letter, defendants withdrew the motion.

On the same date, Allen advised plaintiff he had "successfully negotiated the withdrawal of [defendants'] motion[.]" However, Allen informed plaintiff that his interrogatory responses were

"quite deficient[,]" as they were uncertified and "[m]any of the answers [were] not responsive to the questions[.]" Allen told plaintiff "[i]t [was] imperative that [plaintiff] contact [him] to discuss these responses as [they] must promptly [correct] the deficiencies to avoid the potential of another motion to dismiss."

Upon receiving no responses, in a June 5, 2012 letter, defendants warned Allen that they would renew their motion to dismiss the complaint with prejudice if plaintiff did not respond within thirty days. In response, Allen forwarded plaintiff's uncertified interrogatory responses to defense counsel and informed him he was still waiting for plaintiff's certification, which he would forward upon receipt. Defendants' thirty-day extension expired on July 5, 2012, and plaintiff again failed to submit a timely response. After granting plaintiff another five-day extension, to which he also failed to adhere, defendants renewed their motion to dismiss the complaint with prejudice. On July 27, 2012, the court granted defendants' unopposed motion and dismissed plaintiff's complaint with prejudice for failure to provide responsive answers to interrogatories and requested documents.

On November 2, 2013, plaintiff retained Christopher J. Cassar, a New York attorney. On May 9, 2014, Cassar filed a legal malpractice lawsuit against Allen in the United States District

Court for the Southern District of New York in connection with Allen's representation of plaintiff in his lawsuit against defendants. A default judgment was entered on October 3, 2014. However, on September 17, 2015, the default judgment was vacated and the case was transferred to the United States District Court for the District of New Jersey on Allen's motion. On March 16, 2016, plaintiff retained a third law firm, the Mark Law Firm, LLC, to replace Cassar in the malpractice case against Allen.

In September 2016, plaintiff filed a pro se motion pursuant to Rule 4:50-1, seeking to reinstate his complaint in the underlying action against defendants. In his supporting affidavit, plaintiff explained that in March 2011, about a month after filing suit against defendants, he went to Nigeria "to care for a family member . . . , as [his] presence and expertise were necessary for [his family member's] treatment and recovery." Plaintiff averred he had given Allen instructions to contact his business partner and guarantor Josephine Circosta, who could reach him in the remote part of Nigeria where he was located and "was in constant and continuous contact" with him. He further averred that he informed Allen in October 2011 that, while in Nigeria, his mother fell critically ill, requiring him to extend his stay.

Plaintiff acknowledged receiving several communications from Allen regarding his discovery obligations. However, according to

plaintiff, he "was confused and did not know how to respond to the discovery requests . . . so [he] waited for [Allen] to contact and instruct [him] . . . how to answer the discovery questions." Then, after Allen informed him that the court had dismissed his complaint without prejudice because of his non-compliance, he "undertook to answer . . . as best as [he] possibly could," without Allen's guidance. In a May 8, 2012 letter to Allen, plaintiff acknowledged the deficiencies in his answers and admitted that phone contacts were difficult and unreliable. Nevertheless, plaintiff asked Allen to contact him by phone to "correct the deficiencies" or indicated he would contact Allen to discuss them upon his return to the United States.

Plaintiff averred that "Allen never called [him] to go through the discovery" or "advise [him] how to answer the interrogatories." However, plaintiff acknowledged receiving Allen's May 24, 2012 reply to his May 8, 2012 letter, in which Allen indicated that he had "attempted several times to reach [plaintiff] by phone, however, the calls would not go through." Allen also reiterated that plaintiff could call him at any time.

Plaintiff asserted that on June 6, 2012, Allen informed him that defendants intended to file a motion to dismiss the complaint with prejudice "unless [he] certified the [a]nswers to [i]nterrogatories." He claimed that on June 13, 2012, he emailed

to Allen "the language required to certify and attest to the truthfulness of [his] [a]nswers to [i]nterrogatories" that Allen had previously provided to him. Plaintiff claimed that, although he did not communicate with Allen between June 2012 and March 2013, he was waiting to hear from him regarding a date for his deposition or settlement negotiations. He believed Allen "would reach out and contact either [him] or . . . Circosta if he had any updates regarding [the] case."

When no updates came, plaintiff returned from Nigeria in June 2013 to confront Allen regarding the status of his case. Plaintiff claimed Allen called him in July 2013 to request a letter outlining why he was out of the country, which he provided. Plaintiff also claimed Allen "promised to send a form for [plaintiff] to fill out," but he never received it. Meanwhile, according to plaintiff, Allen refused to tell him "the status of the case" and "kept avoiding [his] questions." As a result, plaintiff lost confidence in Allen and retained Cassar in November 2013.

Plaintiff claimed he was unaware that the dismissal motion had been filed or granted until June 18, 2014, after he retained Cassar's firm. Plaintiff returned to Nigeria in November 2015 to attend a funeral and remained there until January 2016. In February 2016, he was advised that Cassar's firm could not proceed with the litigation in New Jersey because Cassar was not licensed

to practice in New Jersey and the associate on the case who "was licensed to practice in New Jersey had earlier left the firm." At that point, plaintiff sought out a New Jersey attorney and retained the Mark Law Firm to represent him in his case against Allen.

Plaintiff explained he was unfamiliar with the legal system and had "relied upon [his] attorneys to properly assist [him]," but both Allen and Cassar "continuously misled and misinformed" him. Plaintiff claimed the underlying complaint was dismissed "through no fault of [his] own" and attributed the dismissal "to the failures of . . . Allen." As to Cassar, plaintiff averred "Cassar also failed to file the [reinstatement] motion, despite his representations . . . that he would do so."

At the September 30, 2016 hearing on the Rule 4:50-1(f) motion, the court questioned plaintiff's inaction since June 2014, when plaintiff claimed he first learned of the dismissal. Plaintiff responded he "started looking for other attorneys" but "couldn't find anybody to assist [him,]" became "extremely frustrated[,]" and kept writing to Cassar. Following oral argument, the court denied the motion. The court noted that in order to obtain relief, plaintiff needed to show "[e]xtraordinary circumstances[,]" which are "circumstances beyond the ability of the . . . moving party[] to file a [m]otion," that are "peculiar to the individual" and "would make it unconscionable and an

injustice to allow the [j]udgment to stand." The court concluded plaintiff failed to demonstrate extraordinary circumstances because he had "been derelict from the very beginning."

To support its finding, the court cited plaintiff's abandonment of his lawsuit through his two-year absence from the country, his failure to communicate with Allen after learning his case was in danger of dismissal, and his two-year delay in filing a motion to vacate. In contrast, the court noted that while "plaintiff was out of the country[,] his lawyer sent him communications, which he received over a period of many months, and told him that he must file [c]ertified [a]nswers to the [i]nterrogatories sought by the defendant or the [c]omplaint would be dismissed." The court rejected plaintiff's contention that it was his lawyer's fault that the case was dismissed because Allen ignored plaintiff's requests for assistance. The court entered a memorializing order and this appeal followed.

On appeal, plaintiff renews his argument that he is entitled to relief under Rule 4:50-1(f) because the conduct of his previous counsel constituted "exceptional circumstances." Plaintiff argues the court erred by failing to apply the analysis set forth in Jansson v. Fairleigh Dickinson University, 198 N.J. Super. 190, 195 (App. Div. 1985) since the dismissal was the result of his attorney's failure to help him provide timely interrogatory

answers despite his requests for assistance. He also contends his "application was made within a reasonable amount of time from being finally made aware of the true case status and his rights and options."

A trial court's decision on a Rule 4:50-1 motion is entitled to "substantial deference, and should not be reversed unless it results in a clear abuse of discretion." U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). An abuse of discretion may be found when a decision lacks a "rational explanation," represents an inexplicable "depart[ure] from established policies," or rests "on an impermissible basis." Id. at 467-68 (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). Our task is not "to decide whether the trial court took the wisest course, or even the better course, since to do so would merely be to substitute our judgment for that of the lower court. The question is only whether the trial judge pursued a manifestly unjust course." Gittleman v. Cent. Jersey Bank & Tr. Co., 103 N.J. Super. 175, 179 (App. Div. 1967), rev'd on other grounds, 52 N.J. 503 (1968).

Rule 4:50-1 provides various grounds for a court to relieve a party from a judgment. Under subsection (f), the judgment should be set aside for "any other reason justifying relief from the operation of the judgment or order." R. 4:50-1(f). "[R]elief

12

under <u>Rule</u> 4:50-1(f) is available only when 'truly exceptional circumstances are present'" such that "were it not applied, a grave injustice would occur." <u>Guillaume</u>, 209 N.J. at 484 (quoting <u>Hous. Auth. of Morristown v. Little</u>, 135 N.J. 274, 286, 289 (App. Div. 1994)). A party seeking relief under subsection (f) should file a motion "within a reasonable time" after the judgment's entry, "which, in some circumstances, may be less than one year." <u>Orner v. Liu</u>, 419 N.J. Super. 431, 437 (App. Div. 2011); <u>R.</u> 4:50-2.

An attorney's error, misconduct or incompetence may constitute exceptional circumstances warranting relief under <u>Rule</u> 4:50-1(f). <u>Jansson</u>, 198 N.J. Super. at 196. In <u>Jansson</u>, the plaintiffs provided their interrogatory answers to their attorney, who then failed to submit them to the defendants by the applicable deadline, resulting in the dismissal of the complaint. <u>Id.</u> at 192-93. The attorney then "repeatedly misrepresented that the trial was imminent when the plaintiffs inquired as to the status of the case." <u>Id.</u> at 193. The matter remained dormant until the plaintiffs dismissed their attorney and retained new counsel who promptly moved to reinstate the complaint, albeit three years after the dismissal order was entered. <u>Ibid.</u> In reversing the trial court's order denying the reinstatement, we enunciated four factors courts should consider in determining whether the rules

13

should be relaxed: "(1) the extent of the delay [between dismissal and the motion to reinstate], (2) the underlying reason or cause, (3) the fault or blamelessness of the litigant, and (4) the prejudice that would accrue to the other party."  Id. at 195.

In Parker v. Marcus, 281 N.J. Super. 589, 593-94 (App. Div. 1995), we extended the Jansson analysis to cases involving attorney misconduct unrelated to discovery, and in Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 99 (App. Div. 2014), we applied the Jansson factors to errors made by pro se litigants when their acts or omissions would have been grounds to vacate a judgment if committed by an attorney.  However, in Albarran v. Lukas, 276 N.J. Super. 91 (App. Div. 1994), we questioned whether subsequent amendments to the court rules for discovery default rendered the Jansson analysis inapplicable.  Under the amended rule, a party who defaults on his or her discovery obligations has ample opportunities to cure the deficiency.  See R. 4:23-5; see also Albarran, 276 N.J. Super. at 94-95.  In Albarran, following the entry of an order of dismissal with prejudice pursuant to Rule 4:23-5(a)(2) for failure to answer interrogatories, plaintiffs moved twice to reinstate their complaint, which was ultimately granted by the trial court.  Albarran, 276 N.J. Super. at 93-94.

We reversed because, inasmuch as the amended rule gave a party "[]four[] opportunities . . . to avoid dismissal . . . with

14

prejudice" due to discovery default, "we perceive[d] no reason why [the] approach in Jansson should continue to govern this [R. 4:23-5] discovery default problem." Id. at 95. We explained that "[a]fter a party has defaulted in [his or] her discovery obligations" and "foregone four opportunities to discharge [their] responsibilities as a litigant[,]" "the New Jersey Court Rules provide three additional opportunities to a party who seeks to avoid the consequence contemplated by the rule[,]" by virtue of a motion for reconsideration pursuant to Rule 4:49-2, an appeal pursuant to Rule 2:4-1(a), and a motion for relief from a final order pursuant to Rule 4:50-1. Id. at 94.

Here, plaintiff has not shown that the trial court's refusal to grant relief under Rule 4:50-1(f) was a mistaken exercise of discretion. Plaintiff has not demonstrated that the dismissal of the complaint was the result of attorney error, misconduct or incompetence. On the contrary, the record is replete with letters and emails from Allen imploring plaintiff to respond to defendants' discovery requests, inviting plaintiff to contact him with questions, and informing him that defendants intended to move for dismissal if he did not correct the deficiencies. Indeed, the trial court found that the failure to comply with the discovery obligations was entirely plaintiff's fault, rather than his attorney's, noting plaintiff had been derelict from the very

15

beginning. Even applying the <u>Jansson</u> analysis, all four factors, particularly "the fault . . . of the litigant[,]" militate against granting plaintiff relief. 198 N.J. Super. at 195. As plaintiff's own actions caused the dismissal, this case falls far short of the "truly exceptional circumstances" required for relief under <u>Rule</u> 4:50-1(f), and we do not believe that any of the aforementioned decisions require a different result.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION