**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3676-19

BV001 REO BLOCKER, LLC,

    Plaintiff-Appellant,

v.

HB (USA) PROPERTIES, LLC,

    Defendant-Respondent.

_____

Submitted March 24, 2021 – Decided April 16, 2021

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. F-002097-19.

Robert A. Del Vecchio, attorney for appellant (Patrice R. Ianetti, of counsel and on the briefs).

Levitt & Slafkes, P.C., attorneys for respondent (Bruce H. Levitt, on the brief).

PER CURIAM

Plaintiff BV001 REO Blocker, LLC, appeals from the General Equity Part's order vacating a final default judgment of foreclosure of a tax-sale certificate, and granting defendant sixty days to redeem the property. We deferentially review the trial court's exercise of discretion, see Mancini v. EDS ex rel N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993), and affirm, substantially for the reasons set forth in Presiding Judge Edward A. Jerejian's cogent written opinion.

The trial court amply reviewed the undisputed facts. In brief, the real property at the center of this case is the single-family home of Junichi Paul Landau, his wife Li Lai Ming, and their two adult children. Ming is the sole member, and Landau the registered agent, of the single-purpose LLC that purchased the home in 2013 for $1,075,000 in an all-cash deal. Because Ming spent substantial time in Hong Kong and Thailand, where she operated manufacturing businesses, Landau was responsible for paying the taxes.

Shortly after the purchase, Landau and his children were beset with a cascade of serious medical issues. As a result, Landau was unable to work and Ming's businesses failed. Then, defendant stopped paying real-property taxes.

Eventually, plaintiff's predecessor purchased a tax-sale certificate for the property. Defendant failed to redeem the property, and plaintiff subsequently filed its foreclosure complaint.

Defendant does not deny that it received service of the complaint and all subsequent notices leading to entry of default, an order setting the amount, time, and place of redemption, and entry of default judgment. However, in Landau's certification supporting defendant's motion to vacate default judgment, he stated that he hired an attorney shortly after receiving service of the complaint. Landau conceded that he did not monitor his attorney's activities — or lack thereof — because of his own incapacitation and the multiple family crises that commanded his attention.

The attorney evidently did not file an appearance or take any formal action on defendant's behalf. In July 2019, when Landau received the request for entry of final judgment, he contacted his attorney again — only to have the attorney misinform him that he could redeem his property until August 19. So, when he attempted to do so August 14, he learned that the court had already entered final judgment.

Less than four months later, defendant moved for relief from the judgment and sought a reasonable time to redeem. It provided an appraisal valuing the

A-3676-19

house at $1.15 million, which far exceeded the prior redemption amount of roughly $165,000; furthermore, Landau provided proof that he could redeem using funds from his father. In support of defendant's motion, Landau and Ming both recounted their family's financial reversals and medical challenges; Ming also stated that she was out of the country when the foreclosure action was filed, and that she only learned of it when default judgment loomed. At oral argument before the trial court, defendant relied on R. 4:50-1(f) for relief.

Without contesting defendant's factual submissions, plaintiff urged the court to deny the motion. We address only those grounds that plaintiff renews on appeal or raises for the first time before us.

As it did before the trial court, plaintiff argues that defendant's motion was untimely under N.J.S.A. 54:5-87, which states that a court shall not "entertain[]" an "application . . . to reopen the judgment after three months from the date thereof" except "upon the grounds of lack of jurisdiction or fraud in the conduct of the suit." But, as Judge Jerejian correctly noted, the Court Rules govern — and they impose no special time-bar on a motion for relief from a tax-sale foreclosure judgment. See U.S. Bank v. 53 W. Somerset St. Props., LLC, ___ N.J. Super. ___, ___ (App. Div. 2021) (slip op. at 13) (citing M & D Assocs. v. Mandara, 366 N.J. Super. 341, 351 (App. Div. 2004)) (stating that "even the

4

three-month limit must yield to the Court Rules which permit applications thereafter").  Rather, any motion for relief under Rule 4:50-1(f) "shall be made within a reasonable time."  R. 4:50-2.

Plaintiff also argues that defendant failed to present a meritorious defense to the tax-foreclosure action.  This argument misses the mark.  Our cases require a meritorious defense because restoring a case is a futile exercise if the ultimate result will be unchanged.  See U.S. Bank, ___ N.J. Super. at ___ (slip op. at 7 n.3) (noting that "a meritorious defense is required so that 'there is some possibility that the outcome' after restoration 'will be contrary to the result achieved by the default'") (quoting 10A Charles A. Wright et al., Federal Practice & Procedure § 2697 (4th ed. 2020)).  Here, if we grant defendant vacatur, defendant's "redemption w[ill] change the result otherwise achieved by default."  See ibid.

We also reject plaintiff's newly-minted argument that the trial court denied it fundamental fairness by failing to offer plaintiff the opportunity to cross-examine Landau and Ming and challenge the veracity of their certifications.

A court may hear a motion "on affidavits made on personal knowledge." R. 1:6-6.  The rule authorizes the court to "direct the affiant to submit to cross-examination, or hear the matter wholly or partly on oral testimony or

A-3676-19

depositions." Ibid. The court may do so on its own motion, or, in its discretion, upon the respondent's request "where such a motion hinges upon a factual issue and credibility is involved." See Romano v. Maglio, 41 N.J. Super. 561, 573 (App. Div. 1956) (applying predecessor R.R. 4:44-4).

However, plaintiff did not previously contest the facts that Landau and Ming presented; nor did it challenge the couple's credibility. Absent any evident factual issue in the certifications, the court was not obliged to order oral testimony on its own initiative. It is too late now for plaintiff to complain that it was unable to test Landau's and Ming's factual assertions. Absent issues of jurisdiction or "matters of great public interest," we "decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

For the same reason, we do not reach plaintiff's argument that defendant was obliged to support its motion to vacate with a proposed answer to the complaint and a case-information statement. Plaintiff did not raise the point below.

6

Plaintiff also argues that foreclosure will not grant it a "windfall," because it is entitled to foreclosure under the Tax Sale Law. In summarizing his decision, Judge Jerejian stated:

> Given the lack of effective assistance of counsel in this matter, the potential windfall that may be imparted upon [p]laintiff should final judgment be upheld, the overwhelming hardship caused by health issues for Landau and his family, and a potential eviction from one's family home, coupled with the fact that [p]laintiff will not face any undue prejudice by granting [d]efendant's [m]otion because [p]laintiff still stands to gain a satisfaction of the debt owed to it, the [c]ourt finds that [d]efendant has satisfied R. 4:50-1(f).

We discern no error.

The Tax Sale Law "bar[s] the right to redeem by a strict foreclosure, [i.e.], by a judgment that payment be made by a fixed date, in default of which the right to redeem shall end, rather than by a sale as in the case of the foreclosure of a mortgage." Bron v. Weintraub, 42 N.J. 87, 91-92 (1964). The law thus authorizes the certificate-holder, upon foreclosure, to acquire title to property that may be worth far more than the price of redemption.

Although the law permits disproportionate returns on investment, the court did not err in calling this one a "windfall." Our Supreme Court has done the same. See Simon v. Cronecker, 189 N.J. 304, 329 (2007) (noting that "most tax certificate investments end not in windfall profits from foreclosure but rather

in high yield interest returns upon redemption").[1]  Furthermore, a great disparity between the value of the property and the amount required to redeem may help to demonstrate the likelihood that a property owner will redeem, and may support circumstantially a property-owner's claim that its inattention to the litigation was inadvertent.  See Bergen-Eastern Corp. v. Koss, 178 N.J. Super. 42, 46 (App. Div. 1981) (noting the "discrepancy" between redemption amount and value in affirming relief from a tax-sale foreclosure judgment).

Likewise, the trial court did not err in choosing to consider defendant's attorney's omissions.  See Parker v. Marcus, 281 N.J. Super. 589, 591-94 (App. Div. 1995) (granting relief under subsection (f) where plaintiff's attorney failed to respond to the matter while leading plaintiff to believe that he had); Jansson v. Fairleigh Dickinson Univ., 198 N.J. Super. 190, 194 (App. Div. 1985) (stating that the "sins or faults of an errant attorney should not be visited upon his client absent demonstrable prejudice to the other party").  Furthermore, defendant does

---

[1] The Court in Simon addressed the enforceability of an agreement between a financially-distressed taxpayer and a third party who would redeem the property on the taxpayer's behalf, thus preventing foreclosure.  The Court rejected an approach that would bar such agreements because of the third-party's "windfall" profit if the agreement were enforced; such an approach failed to consider the tax-sale certificate-owner's "super windfall" if the agreement were not enforced. Id. at 334.

not rely solely on its attorney's faults. Rather, defendant relies largely on the health issues that disabled Landau and distracted him from overseeing the attorney.

Finally, contrary to plaintiff's contention, Judge Jerejian's decision did not undermine the purpose of the Tax Sale Law. As we recently discussed, the Tax Sale Law's goal of filling municipal coffers by encouraging investors to acquire tax-sale certificates — with the promise of investment gains and, perhaps, foreclosure — coexists with "another important purpose" of the Law: "to give the property owner the opportunity to redeem the certificate and reclaim his land." U.S. Bank, ___ N.J. Super. at ___ (slip op. at 11-12) (quoting Simon, 189 N.J. at 319). As Judge Jerejian observed, vacating this judgment will enable defendant to redeem the property while assuring plaintiff its investment gains.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3676-19