**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0027-20

SVETLANA SCHILLER,

 Plaintiff-Respondent,

v.

CHRISTOPHER JAMES
SCHILLER,

 Defendant-Appellant.

_____

Submitted December 14, 2021 – Decided October 26, 2022

Before Judges DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1096-18.

Haber Silver Simpson & Russoniello, attorneys for appellant (Jani Wase Vinick, on the brief).

Respondent has not filed a brief.

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Defendant Christopher James Schiller appeals from the July 24, 2020 order of the Family Part denying his motion for reconsideration of the financial provisions of the parties' final judgment of divorce (JOD), to set aside their settlement agreement, to vacate several orders implementing the JOD, and denying his application for attorney's fees. We affirm in part and reverse in part.

I.

Christopher[1] and plaintiff Svetlana Schiller were married in 2009. Their two children were born during the marriage. In 2019, the trial court held a twelve-day trial on the parties' cross-complaints for divorce. Christopher and Svetlana disputed custody, parenting time, equitable distribution, alimony, child support, and other matters.

Mid-trial, the parties' counsel placed on the record the terms of a settlement of all financial issues other than attorney's fees and the obligation to maintain life insurance. The parties did not resolve custody and parenting time. The relevant terms of the agreement, as described on the record, are:

(1)     Christopher will buy out Svetlana's interest in the marital home for $69,471.75 pursuant to a separate written sales contract;

---

[1] Because the parties share a surname, we refer to them by their first names. No disrespect is intended.

(2)     Svetlana will vacate the marital home within thirty days after signing the sales contract, but may remain in the home an additional thirty days if she demonstrates she has been unable to find a new residence;

(3)     Svetlana will turn the marital home over to Christopher "as is" and represents the home is in the same condition it was in when Christopher moved out in 2017, other than normal wear and tear;

(4)     Until Svetlana vacates the marital home, Christopher will continue to pay pendente lite expenses in accordance with a prior court order;

(5)     Christopher will pay limited duration alimony to Svetlana of $45,000 for the first two years and $35,000 for the second two years, commencing when Svetlana vacates the marital home;

(6)     After determining custody and parenting time, the trial court will calculate the parties' child support obligations in accordance with the child support guidelines, taking into account the cost of health insurance Christopher pays for the children;

(7)     For purposes of the child support obligation calculation, the court will impute income of $50,000 to Svetlana and $155,000 to Christopher, "taking into account obviously the alimony that's going to be paid;" and

A-0027-20

(8)    Christopher will pay Svetlana $15,000 toward the cost of nursing school, in which she was enrolled, when she presents billing statements to him.

The trial court confirmed with Christopher and Svetlana that they voluntarily entered into the settlement and understood its terms.  The court thereafter directed counsel to reduce the agreement to writing.

After completing the trial, the court issued an oral opinion divorcing the parties and designating Svetlana as the parent of primary residence with Christopher having six out of fourteen overnights with the children.  Based on those findings, the court calculated the parties' child support obligations using the guidelines.  In doing so, the court did not account for the $45,000 in alimony Christopher was obligated to pay Svetlana, instead using only the imputed incomes to which the parties had agreed in their settlement.  In addition, the court did not consider the cost of the children's health insurance premiums paid by Christopher.  As a result, Christopher was ordered to pay Svetlana $165 per week in child support.  In addition, the court ordered Christopher to pay $58,750 of Svetlana's attorney's fees.  Although the parties had not submitted a written memorialization of their settlement, the court entered a JOD and a uniform summary support order (USSO) reflecting its decisions.

4

Christopher's counsel twice wrote the court, urging it to recalculate the parties' child support obligations considering alimony, as provided in the settlement agreement.  He argued that if alimony is considered, Svetlana's income exceeds Christopher's income, and Christopher should be awarded child support from Svetlana.  Christopher raised a number of other issues with respect to the USSO's lack of conformity to the settlement agreement.

After entry of the JOD, the parties remained unable to agree on a written memorialization of their settlement agreement.  Svetlana's counsel submitted to the court her proposed version of the written agreement, asking the court to enter it as a supplemental order to the JOD pursuant to the five-day rule.  See R. 4:42-1(c).  Christopher objected to several provisions of the proposed version of the written agreement and moved pursuant to Rule 4:49-2 for reconsideration of a portion of the JOD.  Although his notice of motion was limited to challenging the award of attorney's fees to Svetlana, he requested more extensive relief at oral argument on the return date of the motion, including recalculation of his child support obligation.  Svetlana opposed the motion and cross-moved for an order compelling Christopher to pay alimony and child support arrears pursuant to the USSO and to reduce the unpaid attorney's fees award to judgment.

5

The court issued an oral opinion denying Christopher's motion and Svetlana's cross-motion, with the exception of Svetlana's request for entry of a judgment for the unpaid attorney's fees. The court concluded it could not recalculate Christopher's child support obligation without proof of the cost of the children's health insurance, but did not address the question of whether alimony should have been considered. The court informed the parties that if they did not reach a written agreement on the settlement, it would enter the proposed order submitted by Svetlana as a supplement to the JOD.

Christopher thereafter submitted written objections to Svetlana's proposed written settlement agreement. Svetlana filed a written response to Christopher's objections.

On May 24, 2019, the trial court entered an order on the parties' cross-motions and incorporating Svetlana's version of the written settlement agreement into the JOD. The court, however, made handwritten changes to the agreement: (1) removing the provision imputing income to the parties for purpose of calculating their child support obligations; and (2) crossing out the unsigned signature blocks.

Christopher subsequently submitted a written objection to the May 24, 2019 order. He argued the court had altered material terms of the parties'

6

settlement agreement and failed to enter a USSO that reflects the parties' agreement. He also submitted proof of the children's insurance costs and requested a recalculation of his child support obligation with the imputed income to which the parties agreed in the settlement.

Christopher also filed a notice of appeal challenging the May 24, 2019 order. While the appeal was pending, the trial court entered a USSO which calculated Christopher's child support obligation without imputing income to Svetlana but imputing $155,000 to Christopher. The court also included $45,000 in alimony paid to Svetlana as taxable income to her and excluded that alimony from defendant's income. Christopher objected to the USSO. The court thereafter entered a series of USSOs, each of which, according to Christopher, did not correctly reflect the court's decision or the parties' settlement agreement. Each time Christopher pointed out errors in the first four USSOs, the court entered a USSO attempting to correct the errors. The USSOs were entered on March 29, 2019, June 24, 2019, July 11, 2019, July 16, 2019, and August 6, 2019. Christopher amended his notice of appeal to include each USSO.

On April 14, 2020, we granted Christopher's motion for a remand of his appeal to permit him to file a motion for reconsideration with the trial court. We dismissed the prior appeal without prejudice.

7

On May 22, 2020, Christopher moved: (1) for reconsideration of the financial provisions of the JOD; (2) to set aside the parties' settlement agreement; (3) to vacate the USSOs; (4) to vacate the supplement to the JOD memorializing the settlement agreement; and (5) for the award of attorney's fees.

In support of his motion, Christopher argued: (1) Svetlana fraudulently induced him to enter into the settlement agreement by misrepresenting her financial condition; (2) the trial court improperly and unfairly modified material terms of the settlement agreement when it altered the written version of the agreement attached to the JOD; and (3) there was no meeting of the minds between the parties with respect to significant terms of the purported settlement agreement.

Christopher argued that Svetlana misrepresented that she was a full-time nursing student with no ability to work when she was actually attending nursing school sporadically and could have been employed. In addition, Christopher alleged Svetlana was earning income from undisclosed employment when the parties entered into the settlement. He argued he would not have agreed to the amount of income imputed to the parties in the settlement had he been aware of those facts. In addition, Christopher argued the court's alteration of the written agreement either invalidated the settlement or is proof the parties did not have a

meeting of the minds on an essential term of the agreement. Svetlana opposed the motion.

On July 24, 2020, the trial court issued an oral opinion denying Christopher's motion. The court concluded Christopher had not established grounds for relief from the JOD or the parties' settlement agreement. With respect to Christopher's claim Svetlana fraudulently induced him to enter into the agreement, the court found:

> [Christopher] claims [Svetlana] has not been transparent about her financial circumstances; however, he's failed to submit any proof that those allegations are in fact true. He does not demonstrate that [Svetlana], at the time of the parties' divorce, was receiving financial support from her now-fiancé . . . . He does not provide any proof of [Svetlana's] finances at the time that the oral settlement was placed on the record. He does not believe that [Svetlana] is a full-time student but fails to provide any documentation to support that assertion.
>
> He comes to the [c]ourt claiming fraud on behalf of [Svetlana]. He does not provide any documentation or other proof to support such an allegation.

Christopher's allegations, the court found, did not meet the clear and convincing standard for establishing fraud.

With respect to the court's alterations to the settlement agreement, the court found "a parent is not free to contract away a child's support," which

9

"belongs to the child and may not be waived or reduced by consent of the parties without good cause." Noting its obligation to protect the children's interest, the court found that "[a]lthough the parties agreed to impute an income to [Svetlana], it would not be practical or fair to impute an income plus the alimony payments . . . as she was not receiving that income at the time." The court explained that "an agreement of an imputed income in this circumstance ultimately waives the children's right to support" because "if both the agreed-upon, imputed income and alimony payments were included in the child support calculation, [Christopher's] child support obligation per week would be close to nothing, around $6 . . . ." The court explained "the change was done sua sponte for the benefit of the children and the children's right to support."

The court also found no grounds to vacate the USSOs. Although the court recognized the earlier USSOs contained errors, it concluded the August 6, 2019 USSO was accurate and superseded the others.

Finally, the court concluded that Christopher was not entitled to an award of attorney's fees. A July 24, 2020 order reflects the trial court's decision.

This appeal follows. Christopher argues the trial court: (1) mistakenly concluded that Rule 4:50-1 affords relief only from judgments for equitable distribution and not judgments setting divorcing parties' child support

obligations; (2) abused its discretion by denying his motion without holding an evidentiary hearing; (3) impermissibly altered the parties' settlement agreement; and (4) erred when it denied his request for attorney's fees.

## II.

Rule 4:50-1 provides, in relevant part:

> [o]n motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: . . . (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . or (f) any other reason justifying relief from the operation of the judgment or order.

An application to set aside an order pursuant to Rule 4:50 is addressed to the motion judge's sound discretion, which should be guided by equitable principles. Hous. Auth. v. Little, 135 N.J. 274, 283 (1994). A trial court's determination under Rule 4:50-1 is entitled to substantial deference and will not be reversed in the absence of a clear abuse of discretion. US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). To warrant reversal of the court's order, Christopher must show that the decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Ibid. (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007) (internal quotations omitted)).

11

In determining whether a party should be relieved from a judgment or order, courts must balance "the strong interests in the finality of litigation and judicial economy with the equitable notion that justice should be done in every case." Jansson v. Fairleigh Dickinson Univ., 198 N.J. Super. 190, 193 (App. Div. 1985). "[J]ustice is the polestar and our procedures must ever be moulded and applied with that in mind." Id. at 195 (quoting N.J. Highway Auth. v. Renner, 18 N.J. 485, 495 (1955)).

Rule 4:50-1 has limited application in divorce actions. Motions "for relief from equitable distribution provisions contained in a judgment of divorce and property settlement agreements are subject to [Rule 4:50-1] and not, as in the case of alimony, support, custody, and other matters of continuing jurisdiction of the court, subject to a 'changed circumstances' standard." Pressler & Verniero, Current N.J. Court Rules, cmt. 6.1 on R. 4:50-1 (2023) (quoting Miller v. Miller, 160 N.J. 408, 418 (1999)).

Relief under subsection (f) of Rule 4:50-1 is available only when "truly exceptional circumstances are present." Little, 135 N.J. at 286 (citation omitted). "The movant must demonstrate the circumstances are exceptional and enforcement of the judgment or order would be unjust, oppressive or

12

inequitable." Johnson v. Johnson, 320 N.J. Super. 371, 378 (App. Div. 1999) (citation omitted).

We are not persuaded by Christopher's argument that the trial court misapplied our precedents with respect to requests for relief from the provisions of the JOD concerning alimony and child support. See Larbig v. Larbig, 384 N.J. Super. 17, 24-25, 28-29 (App. Div. 2006) (the standards set forth in Rule 4:50-1 are applicable to a provision of a property settlement agreement that "cannot be interpreted as an agreement to pay alimony, maintenance or support."); Rosen v. Rosen, 225 N.J. Super. 33, 36-37 (App. Div. 1988) ("courts have allowed modification of property settlement agreements under the catch-all paragraph (f) of [Rule] 4:50-1, permitting modification for 'any other reason justifying relief,' where there is a showing of inequity and unfairness" and "where there is a showing of fraud or misconduct by a spouse . . . .").

Nor did the court err with respect to the standards for establishing fraud. To establish legal fraud, Christopher must prove: "(1) a material representation by [Svetlana] of a presently existing or past fact; (2) knowledge or belief by [Svetlana] of its falsity; (3) an intent that [Christopher] rely upon it; (4) reasonable reliance by [Christopher]; and (5) resulting damage to [Christopher]." Weil v. Express Container Corp., 360 N.J. Super. 599, 612-13

13

(App. Div. 2003) (citing <u>Jewish Ctr. of Sussex Cty. v. Whale</u>, 86 N.J. 619, 624 (1981)). "Fraud is not presumed; it must be proven through clear and convincing evidence." <u>Stochastic Decisions, Inc. v. DiDomenico</u>, 236 N.J. Super. 388, 395 (App. Div. 1989) (citing <u>Albright v. Burns</u>, 206 N.J. Super. 625, 636 (App. Div. 1986)). Our review of the record reveals no support for Christopher's claim that he established sufficient grounds for relief based on fraud. He offered nothing but speculation that Svetlana fraudulently misrepresented her financial condition, status as a nursing student, or ability to earn income at the time the parties reached their settlement agreement. The settlement put on the record by the parties' counsel did not require Svetlana to be a fulltime nursing student. The parties agreed only that Christopher would pay the cost of Svetlana attending nursing school.

We reach the same conclusion with respect to Christopher's argument the trial court erred by not holding an evidentiary hearing on his motion. An evidentiary hearing is not required on an application under <u>Rule</u> 4:50-1 unless the moving party demonstrates a prima facie case of fraud, overreaching, or patent unfairness. <u>Dworkin v. Dworkin</u>, 217 N.J. Super. 518, 525-26 (App. Div. 1987). "[A] plenary hearing is only required if there is a genuine, material and legitimate factual dispute." <u>Llewelyn v. Shewchuk</u>, 440 N.J. Super. 207, 217

14

(App. Div. 2015) (quoting <u>Segal v. Lynch</u>, 211 N.J. 230, 264-65 (2012)). We agree with the trial court's conclusion that Christopher offered insufficient evidence to warrant a hearing. Reconsideration of the JOD was, therefore, not warranted under <u>Rule</u> 4:50-1.

We conclude, however, the trial court made an error of law when it mistakenly exercised its discretion by revising the parties' settlement agreement. The settlement of matrimonial disputes is encouraged and highly valued in our court system. <u>Quinn v. Quinn</u>, 225 N.J. 34, 44 (2016). "'Agreements between separated spouses executed voluntarily and understandingly for the purpose of settling the issue of [alimony and child support] are specifically enforceable, but only to the extent that they are just and equitable.'" <u>Id.</u> at 48 (quoting <u>Berkowitz v. Berkowitz</u>, 55 N.J. 564, 569 (1970)). "[S]uch agreements are subject to judicial supervision and enforcement." <u>Ibid.</u> "The equitable considerations that bear upon the enforceability of . . . support agreements generally include . . . the ability to pay and the respective incomes of the spouses . . . ." <u>Petersen v. Petersen</u>, 85 N.J. 638, 645 (1981).

"The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the expressed general purpose." <u>Pacifico v. Pacifico</u>, 190 N.J. 258, 266

15

(2007) (internal quotations omitted). "It is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear." Quinn, 225 N.J. at 45. "At the same time, the law grants particular leniency to agreements made in the domestic arena, thus allowing judges greater discretion when interpreting such agreements." Pacifico, 190 N.J. at 266 (internal quotations omitted).

The terms of the settlement agreement placed on the record by counsel, and confirmed by Christopher and Svetlana, were clear. The parties left the calculation of their child support obligations to the court once it had made decisions concerning custody and parenting. They expressly placed limits on the court's discretion by agreeing to the amounts of income to be imputed to the parties and by confirming that Christopher's alimony payments to Svetlana would be considered when their respective responsibility for child support was calculated.[2]

We agree that a fundamental principle of New Jersey law is that the right to child support belongs to the child and not the parents. Martinetti v. Hickman,

---

[2] Given the clarity of counsel's verbal recitation of the terms of the parties' settlement agreement and the parties' subsequent on-the-record confirmation of those terms, their failure to agree to a written version of the agreement is not material to our analysis.

261 N.J. Super. 508, 512 (App. Div. 1993). In addition, the needs of the children must be considered by the court when determining the parents' responsibility for child support. N.J.S.A. 2A:34-23(a)(1). However, there is nothing in the record supporting the trial court's conclusion that the parties' agreement to impute income to Svetlana for purposes of calculating the parties' child support obligations would result in the children receiving insufficient financial support.

Svetlana agreed, in exchange for the various benefits she received under the settlement agreement, to have $50,000 imputed to her, in addition to the $45,000 or $35,000 in alimony she would be receiving, for purposes of allocating the parties' child support obligations. Christopher, on the other hand, agreed to imputed income of $155,000, minus, for child support purposes, the $45,000 or $35,000 he would be paying in alimony. By agreeing to this arrangement, the parties came close to equalizing their incomes for purposes of their child support obligations, which reflects the nearly equal parenting time ultimately ordered by the court. The court accepted these terms when the parties placed their agreement on the record.

The fact that Svetlana was not actually earning $50,000 a year is not a proper basis for rejecting the settlement. The imputation of annual income, by its very definition, is an agreement by the parties that the court will calculate

17

their financial obligations based on a specified amount of income without the necessity of proving that they actually earned or could have earned that amount of income. Svetlana did not move for relief from the provision of the agreement imputing income to her and produced no proof that the amount imputed to her was inequitable or unenforceable.

Nor is there evidence in the record that implementation of the parties' agreement to impute income would deprive the children of adequate support. Svetlana was receiving $45,000 in alimony for the first two years and $35,000 in alimony for the subsequent two years and agreed that an additional $50,000 of income should be imputed to her. Although the court opined that Svetlana was not actually earning income, that observation was made without the benefit of proof that Svetlana was not, or could not, earn income while attending nursing school (whether full-time or part-time).[3]

Because the court erred by striking the income imputation provision from the parties' settlement agreement, we reverse the portion of the July 24, 2020 order denying Christopher's motion to recalculate his child support obligation. In addition, we vacate the provisions of the August 6, 2019 USSO concerning

---

[3] We note that Christopher's obligation to pay alimony ends after four years. At that point, the change in the parties' financial circumstances may warrant an application for judicial review of their child support obligations.

18

child support and remand for recalculation of the parties' child support obligations consistent with the terms of their settlement agreement, including the imputation of income to both parties and with consideration of Christopher's alimony obligation.

Finally, counsel fee determinations rest within the trial judge's sound discretion. Williams v. Williams, 59 N.J. 229, 233 (1971). "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). An "abuse of discretion only arises on demonstration of 'manifest error or injustice.'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)).

Under Rule 4:42-9(a)(1), attorney's fees are allowable "[i]n a family action . . . pursuant to Rule 5:3-5(c)." Under Rules 5:3-5(c), when awarding counsel fees,

> the court should consider . . . the following factors:  (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties . . . ; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results

A-0027-20

obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

Applying these principles, we are not persuaded the trial court erred when it denied Christopher's application for attorney's fees. For the most part, Christopher's motion was not successful. To the extent that we reverse the trial court, we do so because of its legal error and not because of any fault on Svetlana's part.

To the extent we have not specifically addressed any of Christopher's remaining claims, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for a determination of the parties' child support obligations consistent with the terms of their settlement agreement and this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION